UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

SHERRY JOHNSON,

        Plaintiff,

v.                                                                                 Case No. 22-cv-0269-bhl

KENOSHA UNIFIED SCHOOL DISTRICT ET AL,

        Defendants.

## ORDER DENYING MOTION TO DISMISS

On March 2, 2022, Plaintiff Sherry Johnson filed this lawsuit against the Kenosha Unified School District (District), its Superintendent Sue Savaglio-Jarvis, and the District's outside counsel, Shana R. Lewis. Johnson's complaint alleges that the Defendants retaliated against Johnson for her use of an innovative special education curriculum and then filed false misconduct allegations against her to cover up their retaliation. (ECF No. 1 ¶¶1–2.) Based on these allegations, Johnson claims the District violated the Americans with Disabilities Act Anti-Retaliation Prohibition. She also asserts claims under 42 U.S.C. §1983 against Savaglio-Jarvis and Lewis, alleging they violated her First Amendment and Equal Protection rights. (*Id.* ¶¶92, 106, 107–113.) The District and Savaglio-Jarvis have both answered Johnson's complaint. (ECF No. 4.) Lewis has instead moved to dismiss, insisting the claims against her fail because she acted as a private attorney and is therefore not subject to Section 1983 liability. (ECF Nos. 11 & 12.) While Lewis's defenses seem strong, her motion will be denied. This case remains at the pleading stage, and Johnson's complaint alleges that Lewis acted in concert with Savaglio-Jarvis and is therefore sufficient to support a finding that she acted "under color of law." Dismissal prior to discovery would be inappropriate.

## FACTUAL BACKGROUND[1]

Plaintiff Sherry Johnson began working as a special education teacher in the Kenosha Unified School District (District) in 2012. (ECF No. 1 ¶¶12, 14–16.) Johnson quickly rose through

---

[1] The Factual Background is derived from Johnson's complaint, ECF No. 1, the allegations in which are presumed true for purposes of the motion to dismiss. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554–56 (2007).

the District's ranks and received consistent praise for her work. (*Id.* ¶¶15–18, 21.) But her innovations to the District's special education program threatened other District special education employees. (*Id.* ¶19.) As a result, Johnson faced retaliation and eventual constructive termination of her employment. (*Id.* ¶¶22–29, 83.)

Johnson's struggles began in the 2018–19 school year when she clashed with fellow special education employee and school-designated mentor, Randal Wehr. (*See id.* ¶¶19, 31.) Johnson wanted to innovate the special education program with individualized education programs, but her innovation threatened Wehr's position as "lead special education teacher." (*Id.* ¶¶17, 21.) To retaliate against Johnson's attempted innovations, Wehr changed Johnson's pupil assignments without advance notice. (*Id.* ¶¶22–25.) Although Wehr reassigned Johnson her original pupils a day later, he soon became overtly hostile to her. (*Id.*) Johnson requested a meeting with Wehr to resolve their disputes, and, at least initially, Wehr responded positively. (*Id.* ¶¶26–28.) Just a month later, however, Wehr reported Johnson to their school's principal, Camille Schroeder, for failing to meet Wehr's mentorship goals. (*Id.* ¶31.) Principal Schroeder responded by removing Wehr as Johnson's mentor, but even then, Wehr's hostility toward Johnson continued, and he told Schroeder that he would not come back to the school the following year if Johnson did. (*Id.* ¶¶34–39.) Wehr also "denigrat[ed]" Johnson to other District employees. (*Id.* ¶36.)

The 2019–20 school year saw things worsen for Johnson. On October 23, 2019, Johnson responded to another educator's request for a "behavior intervention" for a "special education pupil." (*Id.* ¶42.) Johnson escorted the pupil to a resource room for "cool down time," a standard behavior intervention practice. (*Id.* ¶¶43–45.) Wehr witnessed the intervention and alleged that Johnson had mistreated the pupil. (*Id.* ¶45.) After a video review of the incident, Principal Schroeder reported Johnson to the Human Resources department. (*Id.* ¶¶47–48.)

At Wehr's suggestion, Schroeder also recommended Johnson's termination. (*Id.* ¶51.) The District's Chief Human Resources Officer (CHRO) recommended that Superintendent Sue Savaglio-Jarvis allow Johnson to resign instead, because she believed the District would not be able to sustain a just cause termination. (*Id.* ¶53.) Johnson then attempted to resign, but Savaglio-Jarvis and Lewis refused to accept it because Schroeder and Wehr had convinced them that Johnson should be terminated instead. (*Id.* ¶¶54, 56.) Accordingly, Savaglio-Jarvis offered Johnson a full public hearing in front of the District's School Board (Board), an option that Johnson accepted. (*Id.* ¶¶57–58.)

Savaglio-Jarvis and Lewis conducted themselves improperly at the public hearing. (*See id.* ¶¶61–70.) Savaglio-Jarvis, represented by Lewis, and Johnson each presented the video of the incident and offered testimony from four witnesses. (*Id.* ¶62.) These witnesses included the District's Human Resources Coordinator (HRC), who was forced to testify about her own child's experiences with special education. (*Id.* ¶64.) Lewis directed and "coached" the HRC's testimony. (*Id.* ¶66.) The HRC, upset over having been forced to testify, later received a "substantial settlement" from the District to resolve her claims against Savaglio-Jarvis and Lewis. (*Id.* ¶68.) After the hearing, the Board acquitted Johnson of misconduct and accepted her resignation. (*Id.* ¶63.)

With the effort to terminate Johnson having failed, Savaglio-Jarvis attempted to control the damage from the Board's acquittal. (*Id.* ¶71.) To do so, Savaglio-Jarvis and Lewis approached the CHRO, demanding that she sign a license referral that alleged Johnson resigned "'in the face of an immoral conduct charge.'" (*Id.* ¶72.) The CHRO believed the referral to be inaccurate but proceeded because she feared that her job was at risk from both Savaglio-Jarvis and Lewis. (*Id.* ¶73.) Johnson learned about the proposed license referral and questioned Lewis because the District's resignation agreement with Johnson provided for a neutral reference letter. (*Id.* ¶77.) In response, Lewis claimed the District was required to send the referral under Wisconsin law. (*Id.* ¶78.) The CHRO then also resigned and, upon doing so, sent a list of complaints about Savaglio-Jarvis and Lewis to the School Board, which finally realized the allegations against Johnson were false. (*Id.* ¶¶74–76.) Johnson believes that Lewis and Savaglio-Jarvis acted out of personal malice. (*Id.* ¶79.)

Johnson supports her claims with a letter that former Board member Tom Duncan sent to the Texas Education Agency to fix some of the "damage" the license referral caused. (*Id.* ¶81.) Duncan's letter provides that: (1) the CHRO was forced to bring a case before the Board despite not believing one existed; (2) Lewis coached the HRC's testimony; (3) the CHRO resigned following the incident and sparked an investigation resulting in Savaglio-Jarvis's discipline; (4) the HRC was placed on administrative leave and given a settlement after claiming mental duress regarding the situation; (5) Savaglio-Jarvis and Lewis forced the CHRO to file the license referral the day after the hearing; (6) another board member requested an investigation into Wehr and Schroeder; and (7) Duncan personally believed the allegations against Johnson were untrue. (*Id.* ¶82.)

Johnson's husband also contacted the Board, "alerting" it to the "malicious" referral. (*Id.* ¶85.) The Board then directed Savaglio-Jarvis to remedy the situation with the Wisconsin Department of Public Instruction (DPI). (*Id.* ¶86.) The DPI "suddenly found" that Johnson's resignation was not in the face of an immoral conduct charge. (*Id.*) The Board then terminated Lewis's law firm, allowed Savaglio-Jarvis to resign, and made public, favorable comments about Savaglio-Jarvis. (*Id.* ¶¶87–89.) According to Johnson, the District violated the ADA's anti-retaliation prohibition, and both Savaglio-Jarvis and Lewis violated Johnson's First Amendment and due process rights. (*Id.* ¶¶92, 103, 109.)

## LEGAL STANDARD

When deciding a Rule 12(b)(6) motion to dismiss, the Court must "accept all well-pleaded facts as true and draw reasonable inferences in the plaintiff['s] favor." *Roberts v. City of Chicago*, 817 F.3d 561, 564 (7th Cir. 2016) (citing *Lavalais v. Vill. of Melrose Park*, 734 F.3d 629, 632 (7th Cir. 2013)). "To survive a motion to dismiss, the complaint must 'state a claim to relief that is plausible on its face.'" *Roberts*, 817 F.3d at 564 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Roberts*, 817 F.3d at 564-65 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "The complaint must do more than recite the elements of a cause of action in a conclusory fashion." *Roberts*, 817 F.3d at 565 (citing *Iqbal*, 556 U.S. at 678).

## ANALYSIS

An individual defendant can be found personally liable under Section 1983 if he or she: (1) engaged in conduct while "acting under color of state law," and (2) the conduct "deprived the plaintiff of 'rights, privileges, or immunities secured by the Constitution.'" *DiDonato v. Panatera*, 24 F.4th 1156, 1159 (7th Cir. 2022) (quoting *Yang v. Hardin*, 37 F.3d 282, 284 (7th Cir. 1994); 42 U.S.C. §1983). In support of dismissal, Lewis argues that she is a "private bar attorney" and thus did not act "under color of law" to deprive Johnson of her constitutional rights. (ECF No. 12 at 5–6.) Lewis' argument fails because Johnson's complaint alleges enough facts to support a plausible finding that Lewis acted "in concert with" district officials sufficient to trigger Section 1983 liability. Accordingly, Lewis's motion to dismiss must be denied.[2]

---

[2] Lewis does not discuss, and the Court does not rule on, other arguments that might defeat Johnson's Section 1983 claims. *See, e.g.*, *Garcetti v. Ceballos*, 547 U.S. 410, 421 (2006) ("[W]hen public employees make statements

## I. The Complaint Adequately Alleges that Lewis Acted Under Color of State Law by Acting in Concert with Public Officials.

As noted above, liability under Section 1983 requires a showing that the defendant acted "[u]nder color of any statute, ordinance, regulation, custom, or usage, of any State." Typically, to show a defendant acted "under color of law," a plaintiff must show state action by a state official. *Lugar v. Edmondson Oil Co., Inc.*, 457 U.S. 922, 937 (1982). State actions are those where the defendant is "a party whose official character is such as to lend the weight of the State to his decisions." *Id.* But the law recognizes that a private person can engage in conduct "under color of law." *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 161 n.23 (1970); *Lugar*, 457 U.S. at 935 n.18. Private persons who are "willful participant[s] in [a] joint activity with the State" are acting under color of state law. *Adickes*, 398 U.S. at 152. Joint activities between a willful private person and the state become "under color of law" when the private and public parties are in a conspiracy to violate others' rights, *Dennis v. Sparks*, 449 U.S. 24, 27–28 (1980), or have a "'meeting of the minds.'" *Wilson v. Warren Cnty.*, 830 F.3d 464, 468 (7th Cir. 2016) (quoting *Adickes*, 398 U.S. at 158). This conspiracy or meeting of the minds works to cloak the private individual with the authority of law. *See DiDonato*, 24 F.4th at 1159 ("The traditional understanding of what it means for an official to act 'under color of state law' encompasses misconduct by officials exercising power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'") (quoting *West v. Atkins*, 487 U.S. 42, 49 (1988)).

Thus, for Section 1983 purposes, a private actor acts under color of law if he or she (1) "'reached an understanding'" with a state official "'to deprive the plaintiff of her constitutional rights'" and (2) was "'a willful participant in [a] joint activity with the state or its agents.'" *Thurman v. Vill. of Homewood*, 446 F.3d 682, 687 (7th Cir. 2006) (quoting *Hanania v. Loren-Maltese*, 212 F.3d 353, 356 (7th Cir. 2000)). This inquiry turns on the "nature of the specific acts" an official performed, *DiDonato*, 24 F.4th at 1160 (citation omitted), and is "situation-specific and

---

pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline."); *Engquist v. Oregon Dep't of Agric.*, 553 U.S. 591, 605 (2008) ("[T]he class-of-one theory of equal protection—which presupposes that like individuals should be treated alike, and that to treat them differently is to classify them in a way that must survive at least rationality review—is simply a poor fit in the public employment context."); *LaBella Winnetka, Inc. v. Vill. of Winnetka*, 628 F.3d 937, 942 (7th Cir. 2010) ("[D]ismissal at the pleading stage was appropriate because [Plaintiff] failed to allege facts tending to show that it was similarly situated to any of the comparators.").

fact-driven." *Tarpley v. Keistler*, 188 F.3d 788, 792 (7th Cir. 1999) (citing *Dunham v. Frank's Nursery & Crafts, Inc.*, 919 F.2d 1281, 1284 (7th Cir. 1990)).

Johnson's complaint alleges a scheme between Lewis and Savaglio-Jarvis to deprive Johnson of her civil rights. More specifically, she alleges that the District refused to accept her resignation because other District employees convinced Lewis and Savaglio-Jarvis that Johnson should instead be terminated. (ECF No. 1 ¶¶54, 56.) She further alleges that Lewis provided legal counsel to Savaglio-Jarvis for the public hearing, "coached" the HRC's testimony at the hearing, and improperly used the HRC's special-needs child as a subject of the hearing. (*Id.* ¶¶61, 66, 82; ECF No. 14 at 6.) And, she contends, Lewis and Savaglio-Jarvis demanded that the CHRO sign a license referral that listed Johnson's resignation as having been "in the face of an immoral conduct charge," and threatened to have the CHRO terminated if she did not comply. (ECF No. 1 ¶¶72–73.) Even further, the complaint alleges that when asked why she sent the referral, Lewis falsely told Johnson she had to file the referral with the DPI under state law. (*Id.* ¶78.) Finally, Johnson pleads that both Lewis and Savaglio-Jarvis acted maliciously to send the false referral. (*Id.* ¶79.)

Lewis argues that these allegations are insufficient to suggest that Lewis and District officials had a meeting of the minds such that Lewis could be found to have acted under color of law. (ECF No. 12 at 6.) While pleading Section 1983 claims against private parties, including attorneys, is not the norm, Johnson has adequately alleged that Lewis acted under color of law. If Johnson's allegations are true, a jury could find that Lewis willfully participated with Savaglio-Jarvis in a scheme to deprive Johnson of her constitutional rights through the inappropriate use of state authority. *See Thurman*, 446 F.3d at 687; *DiDonato*, 24 F.4th at 1160 (suggesting that Section 1983 claims satisfied when a plaintiff alleges "that a public official's actions involved some inappropriate invocation or exercise of state authority."). Johnson alleges that Lewis used her position as attorney for the District to work with Superintendent Savaglio-Jarvis to threaten other District employees jobs and to report false information to the state. Johnson also alleges that Lewis allowed other District employees to tell both her and the superintendent that Johnson should be terminated. These allegations are sufficient to support a claim that Lewis engaged in a conspiracy with government actors, rendering her actions "under color of law" for purposes of Section 1983. *C.f. Thurman*, 446 F.3d at 687 (holding the district court properly granted summary judgment when plaintiff failed to identify *any* statements that would indicate a meeting of the minds, the

nature of such communications, or the context of such communications).  At the pleading stage, this is all that is required.

Lewis complains that Johnson lacks specific evidence of a conspiracy.  (ECF No. 15 at 5.) But this is not fatal at this early stage in the litigation.  Indeed, a lack of detailed proof is not unexpected given that conspiracies are by their very nature clandestine.  *See Hanania*, 212 F.3d at 356–57 ("[T]he fact that [the defendant's] alleged conflict of interest was so blatantly spelled out in the settlement agreement undercuts the complaint's conspiracy claim.").  Similarly, Lewis cannot achieve dismissal by simply claiming she did not act with personal malice when providing legal advice to Savaglio-Jarvis or other District employees.  (ECF No. 12 at 7.)  Johnson has alleged otherwise, and a motion to dismiss is not the appropriate procedure to resolve the parties' factual dispute.  Indeed, Johnson contends Lewis affirmatively acted *with* Savaglio-Jarvis to violate Johnson's rights.  This type of coordinated activity, if supported by admissible evidence, could constitute a meeting of the minds sufficient to render Lewis's actions to be under color of law.  *C.f. Wilson*, 830 F.3d at 469 ("Lying to a state actor in order to induce him to participate in unlawful conduct . . . is the type of unilateral action that does not create private actor liability.").

Finally, Lewis's argument that as a "private bar attorney" she cannot have acted "under color of law" does not hold up.  *See Polk Cnty. v. Dodson*, 454 U.S. 312, 325 (1981) ("It may be . . . that a public defender also would act under color of state law while performing certain administrative and possibly investigative functions.").  While the exception and not the rule, Lewis's role as attorney does not immunize her from liability, if the evidence shows she did in fact conspire with other District officials to violate Johnson's rights.  Johnson has alleged facts suggesting Lewis conspired with Savaglio-Jarvis against Johnson, and these allegations suffice to defeat Lewis's motion to dismiss.

## CONCLUSION

Accordingly, **IT IS HEREBY ORDERED** that Defendant Lewis's motion to dismiss, (ECF No. 11), is **DENIED.**

Dated at Milwaukee, Wisconsin on October 25, 2022.

s/ *Brett H. Ludwig*
BRETT H. LUDWIG
United States District Judge