IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| Sherry Johnson, )<br>    Plaintiff )<br> )<br>v. )<br>Kenosha Unified School District, )<br>Sue Savaglio-Jarvis, and )<br>Shana Lewis, )<br>    Defendants. ) | Case No. 22-cv-269 |

**DEFENDANT SHANA LEWIS'S
MEMORANDUM IN SUPPORT OF RULE 11 MOTION FOR SANCTIONS AGAINST
PLAINTIFFS COUNSEL**

Defendant Shana Lewis, by her undersigned counsel, moves the Court for an Order sanctioning Benjamin J. Hitchcock-Cross and Cross Law Firm, S.C. (collectively, "Cross"), counsel for Plaintiff, for repeated and egregious violations of Fed. R. Civ. P 11(b).

Throughout this litigation, Cross has engaged in a series of tactics ranging from frivolous to harassing to abusive to try to find some hint of actionable wrongdoing by Lewis. These tactics have repeatedly failed. This is a case that never should have been filed, and certainly should not have continued past Johnson's deposition on July 10, 2023.

Lewis, by counsel, served the motion and brief, along with a cover letter seeking withdrawal of all claims made by Plaintiff Sherry Johnson against her, on Cross as counsel for Johnson on September 19, 2023 via email and U.S. mail. (10/13/2023 Rosenzweig Decl. filed herewith) At least 21 days have passed and Cross has not withdrawn the claims. Accordingly, she seeks sanctions including dismissal of the claims against her, reasonable attorney fees for bringing

1

this motion, reasonable attorney fees and costs attributable to Lewis's defense, and other relief as the Court sees just and fair.

I. LEGAL STANDARDS

Federal Rule of Civil Procedure 11(b) states: "REPRESENTATIONS TO THE COURT. By presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:

> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
>
> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;
>
> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and
>
> (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information."

If the court determines that Fed. R. Civ. P. 11(b) has been violated, the court may impose a sanction.

Pursuant to Fed. R. Civ. P. 11(c)(2), "a motion for sanctions must be made separately from any other motion and must describe the specific conduct that violates Fed. R. Civ. P. 11(b)." Any sanction imposed "must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated." Fed. R. Civ. P. 11(c)(4). Reasonable attorney's fees and other expenses directly resulting from the violation are possible sanctions. *Id*. Fed. R. Civ. P. 11(d)

Fed. R. Civ. P. 11 "is principally designed to prevent baseless filings." *Brunt v. Serv. Emps. Int'l Union*, 284 F.3d 715, 721 (7th Cir. 2002). "The very point of Rule 11 is to lend incentive for

litigants 'to stop, think and investigate more carefully before serving and filing papers.'" *Berwick*, 217 F.3d at 505 (quoting *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 398, 110 S. Ct. 2447, 110 L. Ed. 2d 359 (1990)). "Frivolous or legally unreasonable arguments ... may incur [a Rule 11] penalty," *Berwick Grain Co. v. Ill. Dep't of Agric.*, 217 F.3d 502, 504 (7th Cir. 2000).

"Rule 11 embodies both an objective and a subjective standard, prohibiting both frivolous on the objective side and bad faith on the subjective side." *MAO-MSO Recovery II, LLC v. State Farm Mut. Auto. Ins. Co.*, 935 F.2d 573, 583 (7th Cir. 2019) (citing *Mars Steel Corp. v. Continental Bank N.A.*, 880 F.2d. 928, 931, (7th Cir. 1989). "The objective component is that a paper filed in the best of faith, by a lawyer convinced of the justice of his client's cause, is sanctionable if counsel neglected to make 'reasonably inquiry' beforehand." *Mars Steel Corp*. 880 F.2d at 932. "How much investigation is justified in light of the costs depends on the circumstances of the case and Rule 11 does not allow an award of sanctions just because things went poorly after an investigation that was adequate in light of what was known." *Id*. The 7th Circuit has "emphasized repeatedly that an empty head but a pure heart is no defense" to Rule 11 sanctions. *MAO MSO Recovery II, LLC*, 935 F.2d at 584.

II. CROSS KNEW, OR WITH REASONABLE DILIGENCE SHOULD HAVE KNOWN, THE COMPLAINT WAS DEFECTIVE

Through the course of this matter, it became clear to Lewis what was likely clear to Cross from well prior to March 2, 2022: The Complaint is frivolous and should never have been filed. Not only does it lack evidentiary support now, it has always lacked support and Cross should have known that.

Moreover, the causes of action raised against Lewis are legally deficient and Cross should have known that as well. Defendants may not have had clarity on the claims until after party depositions were taken, but Cross knew Johnson's claims and should have researched them

3

appropriately. Either he properly researched the claims, realized they were defective, and decided to proceed anyway, or he did not adequately do so. As stated above, both objective frivolousness and subjective bad faith are sanctionable.

While whether this action was commenced and continued frivolously, in bad faith, or in a combination of both is not dispositive, but Cross's conduct during the course of this litigation suggests bad faith at the very least. Plaintiff filed the entire transcript of Lewis's deposition into the record (ECF No. 31-4) in support of a confusing and extraneous motion to compel (ECF No. 30), and we ask that the Court review it in its entirety. Although Rule 11 sanctions do not apply to discovery abuses, this transcript lays bare the vexatious and harassing nature of Cross's conduct here.[1] During this lengthy deposition (which began at 9:12 a.m. and continued until 4:23 p.m.), Cross asked perhaps a handful of relevant questions and instead proceeded to badger Lewis about irrelevancies, such as her involvement in a wholly unrelated termination case (see ECF No. 31-4 at 27:6-10), and even whether "common sense" is a Supreme Court rule (ECF No. 31-4 at 153:1-2). See also ECF No. 31-4 at 175:11-13 (" We are [bordering] on a frivolously pursued deposition for the sole purpose of harassing this witness.").

Sanctions are warranted.

A. THIS CASE LACKED EVIDENTIARY SUPPORT FROM THE OUTSET

Lewis as well as the other defendants Sue Savaglio-Jarvis and Kenosha Unified School District (KUSD) previously moved the Court for summary judgment, and all defendant parties included detailed recitations of facts in this case. (ECF Nos. 34, 44.) These facts as well as the

---

[1] While the whole transcript is worthy of review, we draw the Court's attention in particular to pages 68-69, 130-131, 152-153, 174-175, 200-203, and 300-302.

supporting memoranda (ECF No. 36, 43) are incorporated into this Memorandum by reference and need not be recreated in full here.

However, relevant to this Motion is what Cross knew—or didn't know despite having ample opportunity and an obligation to find out—and when. The record is now replete with evidence that Cross did not properly investigate the claims before they were made, and has instead initiated and then persisted in this course of action, long past any reasonable stopping point, which has had no discernible purpose other than perhaps to harass, embarrass, and annoy Lewis.

The Complaint was filed March 2, 2022. (ECF No. 1.) In the Complaint, Johnson asserted two causes of action against Lewis under 42 U.S.C. § 1983—one for retaliation against Johnson for her alleged "advocacy for the special education rights of a student" (*id*. ¶ 103), and one for intentional denial of due process rights "by filing a malicious and false license referral to the Wisconsin Department of Public [I]nstruction after the Plaintiff separated from the KUSD." (*Id*. ¶ 109.) Leading up to these causes of action were a litany of factual allegations, none of which were asserted upon information and belief or with any other indication that they had evidentiary support. (See Fed. R. Civ. P. 11(b)(3)). These allegations included:

> 56. Superintendent Savaglio-Jarvis and attorney Lewis animated by Wehr and Principal Schroeder refused to allow Johnson to resign and demanded her termination.
>
> 61. Superintendent Savaglio-Jarvis prosecuted Johnson with legal counsel from Attorney Shana Lewis.
>
> 65. Superintendent Savaglio-Jarvis and Attorney Shana Lewis were more concerned about retaliating against Johnson than confidentiality, good management, and decency.
>
> 66. Attorney Shana Lewis coached [Human Resources Coordinator Maxceen Augustus] and directed the HRC on what testimony to provide to the board.
>
> 68. The District made a substantial settlement with the HRC to resolve the HRC potential claims against the District for Superintendent Savaglio-Jarvis and Attorney Shana Lewis' use of the HRC's confidential information.

72. On March 6, 2020, three days after the District acquitted Johnson at hearing, Savaglio-Jarvis and Lewis approached the [Chief Human Resources Officer Lindsey O'Connor] and demanded that the CHRO sign a license referral (complaint) against Johnson alleging that Johnson resigned "in the face of an immoral conduct charge".

73. The CHRO made it clear that she did not believe that the referral was accurate and believed her job was threatened by Savaglio-Jarvis and Lewis to sign.

74. The CHRO resigned soon afterward because of the false license referral and other problems with Savaglio-Jarvis and Lewis.

78. Lewis answered on behalf of the District that the District was required to send the referral because of Wis. Stat. Sec. 115.31.

79. Savaglio-Jarvis and Lewis were motivated by personal malice.

87. On April 23, 2021, the Board responded [implicitly to Johnson's husband's overtures to the school board] by terminating Strang, Patteson, Lewis & Lacy, Attorney Lewis' law firm.

(See ECF No. 1.)

In her Complaint (ECF No. 1 ¶¶ 81-82), Johnson referenced an August 8, 2021 letter (actually an email) from former KUSD school board president Tom Duncan to the Texas Education Agency. The Complaint acknowledges Duncan was no longer a member of the board when he sent the letter, but claims he was trying to "privately clear[] up the damage caused by the Defendants' malicious license referral." (*Id.* ¶ 81.) The letter [2] was summarized in the Complaint as follows:

> a) The Chief Human Resources Officer did not believe there was a case to be brought before the School Board. This individual was forced to bring forth the case;
> b) The Human Resources coordinator with a special needs child was forced to provide testimony against her will and was coached by the District's prosecuting attorney on exactly what to provide as far as testimony;
> c) The Chief Human Resources Officer resigned her position following this incident and sent a letter to the Board initiating a formal complaint that lead to an investigation and

---

[2] The letter is in the record at ECF No. 35-23 and elsewhere.

discipline with respect to the Superintendent and concluding all legal services with the attorney and her law firm who was prosecuting the case;

d) The Human Resources coordinator claimed mental duress and was placed on Administrative Leave and subsequently a settlement since she was of the belief she could not return to work in such an unethical and toxic environment;

e) During the investigatory process it was learned that the Superintendent and the prosecuting attorney forced the Chief Human Resources Officer to file the completely inaccurate and untrue License Review Referral the day following the hearing. This letter and all related documentation was subsequently removed from Johnson's Wisconsin DPI file and I [Tom Duncan] believe the interim Chief Human Resources Officer, Kevin Neir was in contact with [the DPI] to further explain what had occurred to clear-up any misunderstanding and we all thought Ms. Johnson was finally exonerated, as she should be.

f) It is my understanding that a board member has asked for an investigation of the teacher who brought the accusation forth as well as the school principal; and

g) There is simply no truth to Ms. Johnson having acted improperly and she certainly did not "improperly handle a special needs elementary student when walking down the hall." The entire district board, that included a former special needs teacher, watched the video several times and even questioned Ms. Johnson who categorically denied any wrong doing. I personally interviewed two teachers after the hearing at the Prairie Lane Elementary School that collaborated that Ms. Johnson would never mishandle a student and proclaimed her to be one of the very best teachers.

ECF No. 1 at pp.12-14, ¶ 82 a-g.

Through the course of discovery, it became evident to Lewis that these allegations (other than Paragraph 78, which Lewis acknowledged in part in her answer, see ECF No. 20 ¶ 78) not only lacked factual and legal support, but likely lacked said support at the time of the filing of the complaint. Nonetheless, they were not identified as being alleged upon information in belief.

The Tom Duncan letter was discussed at several depositions, including Johnson's. (ECF No. 35-3). Johnson, in her deposition, was asked why she sued Lewis, a private bar attorney who she did not know prior to the March 3, 2020 termination hearing. Johnson revealed that she relied *entirely* on the Duncan letter in deciding whether to sue Lewis. (*Id*. 240:14-241:17)

7

Moreover, when asked about the factual bases for her specific allegations—i.e. that Lewis threatened her or constructively discharged her, or that she and Savalgio-Jarvis conspired against her—she could not recall, could not remember, did not know. (*Id.* 259:13-261:11.) She had no first-hand knowledge of any of these allegations, and did nothing at all to attempt to corroborate any of these allegations. (*Id.* 241:4017.)

Duncan, in his deposition, also revealed little beyond hearsay. He testified that he was "informed that Dr. Sue and Ms. Lewis coached the interviewees on what they were to say during the investigation," but he did not say who "informed" him of this, only referring to them as "contacts." (SLSOF 41.) Duncan further testified that it was his "understanding," from Augustus,[3] that Augustus was "coached." (SLSOF 42.) However, Duncan was not present for any of Augustus's preparation for her testimony. (SLSOF 43.) Duncan did not have an understanding of what "coached" meant, only that "[Augustus] was informed as to what she should be saying during the hearing." (SLSOF 44.)

Additionally, Duncan was asked whether anyone affiliated with the Cross firm prior to March 2, 2022, discussed with him any of the allegations in his complaint. Benjamin Hitchcock-Cross did attempt to contact Duncan but "was attempting to in a manner which I found to be unacceptable" (ECF 35-12 at 136:9-10) and Duncan became angry and hung up. Duncan denied that Cross attempted to review the August 8 letter with him or asked any questions about the veracity of its contents. (*Id.* at 136:20-25.)

If Johnson did not do anything to verify the contents of Duncan's letter, and Cross did not do anything effective to verify the contents of Duncan's letter, then it never should have served as

---

[3] Augustus was not deposed and there is no competent evidence providing foundation for anything Augustus—or anyone else—may have said to Duncan.

8

Case 2:22-cv-00269-BHL   Filed 10/16/23   Page 8 of 13   Document 53

a basis, let alone as the sole basis, for a federal lawsuit. Nevertheless, Cross persisted and filed the lawsuit anyway.

Furthermore, following depositions, the defense learned that not only were the allegations in Duncan's letter never verified, many were also provably false:

- Augustus, the Human Resources coordinator, was not "forced" to testify, as to her child with special needs or otherwise. She did so in response to open-ended questions; Lewis did not ask her about her child. Johnson's attorney Smith did ask her a specific question, however, on cross-examination. (ECF No. 35-13 at 73:22-74:24, 78:18-79-18).)[4]
- Per the contemporaneous minutes taken by board secretary Stacy Busby (ECF 39-40), the sentiments by the Board were not unanimous, and were never expressed in open session.
- There was never a public expression that Johnson had been exonerated or even that there were "no grounds for termination." (ECF No. 35-16.)
- Duncan himself decided to conclude services with Lewis' firm, and he testified it was because Lewis was "unmerciful" (his personal investigation) in her cross-examination. There was no investigation or discipline regarding her firm. (ECF No. 35-12 at 37:7-13; 75:16-20; 118-9-12.)
- The Referral was not "completely inaccurate and untrue"; in fact, it was true. Although the Board had ultimately allowed Johnson to resign and did not fire her, she was accused of using excessive force (see Statement of Charges, ECF No. 9), which administration reasonably believed to be immoral conduct, and resigned without the Board having dismissed or otherwise publicly weighed in on those charges. Again, this is something evident from the face of the relevant documents, all of which Cross had in its possession since before the Complaint was filed.
- The DPI did not remove the Referral or "all related documentation from its file; DPI counsel Ben Jones produced the Referral in August 2023 for his deposition. (ECF No. 35-19 and 35-25.)

With few exceptions, these facts were known to Cross before March 2, 2022, because they came from documents within his possession, or at the very least, could have been addressed by his client. The facts he could not have necessarily known, such as those elicited in Ben Jones's deposition,

---

[4] Testimony and votes taken by the Board are evident from the transcript of the disciplinary hearing (ECF 41-10), which counsel had in his possession from September 10, 2020, when the transcript was sent by KUSD to various parties including Ben Hitchcock-Cross and a DPI investigator. (ECF 41-9 at 77.)

are not material, as even basic inquiry into the facts alleged by Tom Duncan would have cast doubt on the veracity of the entire letter.

None of the factual allegations were made upon information and belief; Fed. R. Civ. P. 11(b)(3) requires factual contentions lacking evidentiary support when they are made but likely to have support after further investigation or discovery to be specifically identified. Accordingly Cross, in signing the pleading, has represented that these allegations had evidentiary support as of March 2, 2022. This is not the case.

A reasonable attorney performing reasonable diligence should never have brought this case in the first place, and certainly should not have continued it to this point.

B. THE CLAIMS AGAINST LEWIS WERE NEVER LEGALLY COGNIZABLE

1. Count 2 fails legally because public school employees do not have First Amendment protections for speech or "advocacy" made within the course of their duties.

As stated in Lewis's memorandum in support of summary judgment (ECF No. 36), Johnson's First Amendment claims are barred under *Garcetti v. Ceballos*, 547 U.S. 410, 126 S.Ct. 1951 (2006), *Mayer v. Monroe County Cmty. Sch. Corp,* 474 F.3d 477 (7th Cir. 2007) and others holding that government employees (including school teachers) do not have First Amendment protections for speech made in the course of their public duties. We incorporate that argument here by reference.

In her deposition, Johnson testified that all of her speech and advocacy were performed in the course of her public school job. (ECF No. 35-3 at 301:12-306-4). She did not identify any speech made as a private citizen that allegedly subjected her to retaliation. Accordingly, her claim fails.

While the Defendants could not have confirmed this fact until Johnson's deposition, Cross knew or, had he conducted reasonable inquiry of his client, should have known that *Garcetti* and others barred Johnson's claims from the beginning. Even assuming *arguendo* the factual allegations she made were true, Johnson still had no hope of recovering. This claim never should have been filed.

2. Count 3 fails legally because not only was the Referral substantially true, but also a "class of one" does not exist in a public employment context

As with Count 2, Lewis's memorandum in support of summary judgment explored Johnson's due process claim. Briefly, it fails for multiple reasons, most importantly, because the Referral's contents are substantially true. Johnson was alleged to have "used excessive force to move a child"; that was recited in the Statement of Charges as "while working with Student D, Ms. Johnson grabbed him by the arm and led him out of the cafeteria; then she grabbed Student D by the scruff of his neck with a portion of his t-shirt in her hand and dragged him down the hallway." (ECF 35-9 at KUSD000086.). Johnson *did* "resign in the face of immoral conduct charge," again because she resigned without a determination that she did not engage in immoral conduct. Wis. Stat. § 115.31(1)(c)1 defines immoral conduct to include "conduct or behavior that is contrary to commonly accepted moral or ethical standards and that endangers the health, safety, welfare, or education of any pupil." Administrators are required to report these circumstances, can face criminal penalties for failing to do so, and are immune from civil liability when they do make a report. Wis. Stat. § 115.31(3)(a)4; (5)(b); (7).

Again, these facts were all known to counsel before he filed the lawsuit. He was surely aware of the law as well, because he cited it in the complaint. (ECF No. 1 ¶ 78.) Yet, he filed anyway.

Finally, Johnson styled this claim as a "class of one" equal protection claim (ECF No. 1 ¶ 108). This claim is not recognized in a public employment context, and the prohibition against a class-of-one claim in public employment is "categorical." *Geinosky v. City of Chicago*, 675 F.3d 743, 747 (7th Cir. 2012). This 2012 case predated the instant lawsuit by a decade. Cross should have known that this claim was barred and should never have made it.

## CONCLUSION

Enough is enough. Sanctions are warranted to compensate Lewis for the sheer amount of wasted time and harassment endured, and to deter Cross from engaging in such conduct in the future.

Accordingly, Lewis respectfully requests the following sanctions be awarded in her favor, and against Benjamin Hitchcock-Cross and Cross Law Firm S.C., jointly and severally, to include:

1. Dismissal of all claims against her, with prejudice;
2. Reasonable attorney's fees and costs necessitated by this motion;
3. Reasonable attorney's fees and costs incurred in Lewis's defense, dating back to commencement of this lawsuit;
4. In the alternative, reasonable attorney's fees and costs incurred in Lewis's defense, dating back to a time the Court deems just, fair, and reasonable; and
5. Such other and further relief the Court deems just and fair.

Should the Court grant Lewis's motion and award costs and fees, we ask for a reasonable time following the Order to submit documentation to support said costs and fees.

Respectfully submitted this 16th day of October, 2023.

s/Stacie H. Rosenzweig
Stacie H. Rosenzweig
State Bar Number 1062123
Sherre K. Chevalier
State Bar Number 1115508
Attorney for Defendant Shana Lewis

HALLING & CAYO SC
320 East Buffalo Street
Suite 700
Milwaukee, Wisconsin 53202
Telephone: (414) 271-3400
Fax: (414) 271-3841
Email: shr@hallingcayo.com
Email: skc@hallingcayo.com
