UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN
MILWAUKEE DIVISION

SHERRY JOHNSON,

                                           Case No. 22-269

            Plaintiff,

               v.

KENOSHA UNIFIED SCHOOL
DISTRICT, SUE SAVAGLIO JARVIS,
AND SHANA R. LEWIS

            Defendants.

**PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANT LEWIS'S MOTION
FOR SANCTIONS**

## I.      INTRODUCTION

Defendant Lewis's Rule 11 Motion is based on (1) a misapprehension of the

legal arguments supporting Plaintiff's theories of liability, (2) an inaccurate

characterization of the evidence, and (3) an incorrect assumption that Plaintiff

knew of all the facts her attorney learned during his investigation, including an

interview with Lindsey O'Connor, HR Chief who accused Lewis and Savaglio-Jarvis

of forcing her to file the  Department of Public Instruction ("DPI") referral despite

her protestations. As described below, Lewis' record citations do not support the

broad and conclusory allegations at the core of Defendant's motion, therefore her

motion must be dismissed.

## II.    APPLICABLE LAW

Rule 11 sanctions are a rarity. See *Hartmarx Corp. v. Abboud*, 326 F.3d 862, 867 (7th Cir. 2003) ("[A] district court must . . . bear in mind that [Rule 11] sanctions are to be imposed sparingly."). The court must "reflect seriously, and consider fully, before imposing (or denying) sanctions." *II Ltd. v. English*, 217 Fed. App'x 527, 529 (7th Cir. 2007). Assessing the reasonableness of a party's pre-filing inquiry requires the court to ascertain whether "the party or his counsel [objectively] should have known that his position is groundless." *Cuna Mut. Ins. Soc'y v. Office & Prof'l Emps. Int'l Union,* Local 39, 443 F.3d 556, 560 (7th Cir. 2006) (citations omitted).

A Plaintiff is "not required to have sufficient information to prevail on a motion for summary judgment, a motion to dismiss for failure to state a claim, or at trial to comply with Rule 11. *Vista Mfg., Inc. v. Trac-4, Inc.*, 131 F.R.D. 134, 138 (N.D. Ind. 1990) (citation omitted). Where a claim's plausibility has already been challenged under Rule 12, "appropriate deference should be given to a district court's decision on a motion to dismiss." *Cooney v. Casady*, 735 F.3d 514, 522 (7th Cir. 2013). A plaintiff "should not be faulted for proceeding with her case once she was given the chance to do so with the denial of the motion to dismiss." *Id.*


## III.    ARGUMENT

Defendant Lewis supports her Rule 11 motion with one evidentiary argument, claiming that (1) various allegations "lacked evidentiary support" from

the outset (ECF 53 at 4-10) and two legal arguments, i.e., (2) that Plaintiff's Free

Speech and (3) Equal Protection claims (Counts 2 and 3) "were never legally

cognizable" (ECF 53 at 10-12). All three arguments fail to demonstrate a basis for

sanctions. This brief will address the two legal arguments first.

**A. Plaintiff's First Amendment Retaliation Claim Against Lewis Was and Remains Legally Cognizable**

Defendant Lewis relies on a five-page excerpt from Plaintiff's deposition to

support her argument that Plaintiff's First Amendment claim is barred by *Garcetti v.*

*Ceballos*, 547 U.S. 410, (2006). Without addressing or quoting any specific testimony

from the excerpt, Lewis asserts that Plaintiff testified that "all of her speech and

advocacy were performed in the course of her public-school job." ECF 53 at 10. But

even assuming Plaintiff's answer to a question of law posed at a deposition could be

dispositive (and Plaintiff submits it cannot), Lewis mischaracterized the record.

Lewis only recapitulates that Plaintiff exercised her first amendment rights

*via her participation in a public-school board hearing* about a matter of public

concern, i.e. the alleged use of excessive force against student which Plaintiff

addressed in her Brief in Opposition to Defendants' Motions for Summary

Judgement: *Lane v. Franks*, 573 U.S. 228, 229, (2014); *United States v. Alvarez*, 567

U.S. 709, 720 (2012).

Contrary to Defendant's suggestion, Plaintiff never contended that her

communications at work, with coworkers, and about work constitutes the crux of

her free speech-retaliation claim. To the contrary, Johnson's participation in the

public hearing carries her free speech claim..  Lewis relies on testimony that supports the free speech claim:

> Q:    Let me try it this way. **Other than answering questions and, in fairness, during the investigation and in fairness to your testimony that you provided at the hearing**, did you ever speak out on behalf of the student who was depicted in that video?
>
> A:    Did I speak out?
>
> Q:    Yeah.
>
> A:     Absolutely.
>
> Q:    Okay. Who did you speak out to regarding that student?
>
> A:     <u>**So during the hearing itself**</u>, when I was under oath –
>
> Q:    **Hold on. Hold on. You missed my -- you missed the caveat in my question**.
>
> A:    Yep.
>
> Q:    **Other than when you testified at the hearing** –
>
> A:     There you go, sorry.
>
> Q:    -- and other than, like, I'm assuming when you were interviewed by HR they asked you questions about the student. I get all of that. **Put all of the disciplinary-type information, hearing, or investigation aside.**
>
> A:     Okay
>
> ….
>
> Q:    So your conduct in relation to your speech or conduct to protect that student -- **again, putting on the shelf the disciplinary issue** --
>
> A:     Correct
>
> Q:    -- that was all part of your job; right?
>
> A:     Yep.

(ECF 35-3 at 303:2-24; 304:22-305:2 emphasis added). Thus, Defendant's Rule 11 argument omits the critical "caveat," i.e., that Plaintiff had been asked to put the crux of her free speech claim, i.e., the public hearing, "on the shelf" before providing the answer upon which Lewis now relies. At best, this reflects sloppy citation. At worst, it reflects intentional misrepresentation of the record.

As briefed fully at ECF 58, *Garcetti* does not bar Plaintiff's claim, because her participation in the public hearing was voluntary, on her own time, and not part of her duties or responsibilities. (ECF 59 PPFOF 35 & 36). This position, like Plaintiff's position on application of the fact-intensive *Connick-Pickering* test, is far from frivolous, because the record is replete with instances of the Plaintiff speaking on matters of public concern regarding a public-school student at a public-school board hearing, before the board, with members of the public and the media present. (ECF 58 pp.9-14). In fact, the hearing was only public at the Plaintiff's insistence. (ECF 64-9 pp. 64-65.)

Indeed, Defendant Lewis' argument that Plaintiff's hearing testimony was "part of being a teacher" and that therefore she was "speaking as a teacher" is circular and conclusory. (ECF 62 p. 4). While Defendant Lewis insists that the facts favoring Plaintiff—i.e., that she was testifying on her own time, voluntarily, in a public hearing—are non-dispositive, Defendant cites no countervailing facts supporting her preferred characterization of the hearing, likely because the record contains no such facts. This is inadequate to obtain summary judgment, and therefore far from a sufficient argument for sanctions.

Similarly conclusory is Defendant Lewis's application of the *Connick-Pickering* test. For example, Defendant claims that because Plaintiff was testifying "about her job" and in her own defense, the testimony could not be a matter of public concern. Lewis ignores precedential case law cited by Plaintiff in her Opposition to Summary Judgement regarding the non-dispositive nature of the personal motives or contexts in determining whether speech touches a matter of public concerns,

Lewis's assertion that Plaintiff's position is so wrong as to be sanctionable is itself frivolous. See ECF 58 pp 9-10(citing and quoting *Breur v. Hart*, 909 F.2d 1035, 1039 (7th Cir. 1990) and *Marshall v. Porter Cty. Plan Comm'n,* 32 F.3d 1215, 1219 (7th Cir. 1994)). A teacher accused of excessive force can be an obvious matter of public concern, regardless of the identity of the person speaking on the matter.

Finally, Defendant Lewis's application of the multifactor *Pickering* test and conclusion that "all factors weigh" in the employer's favor is so conclusory and without citation that a response is neither warranted nor possible. (see also Lewis' response to (PPFOF 43-45 at ECF 64 p. 17),) As described more fully in Plaintiff's brief in Opposition of Defendants' Motion for Summary Judgement the *Pickering* factors clearly favor Plaintiff. (ECF 58 pp 12-14).

## B. Lewis is Not Entitled to Qualified Immunity, and Plaintiff has Not "Waived" Any Arguments to the Contrary

Defendant Lewis's recent suggestion that Plaintiff has "waived" any response to the qualified immunity argument Lewis added to the end of her

summary judgment brief holds no water. (ECF 62 at 1) (citing ECF 36 at 22-26)[1].

Specifically, Lewis argued that *Filarsky v. Delia*, 566 U.S. 377 (2012) and its application of qualified immunity to certain non-government actors supported summary judgement, block quoting Filarsky's "public policy rationale." (ECF 36 at 24). Notably, Lewis expressly argued this in purported *anticipation of an argument Plaintiff never made*, i.e. that qualified immunity cannot apply to Lewis because she was a private actor. (ECF 36 at 23) ("Johnson **may** argue that as a private actor, Lewis is not entitled to qualified immunity (even as she seeks to hold her liable under a public actor statute) and **may** cite *Wyatt v. Cole* ....") (emphasis added). Since Plaintiff did not make or intend to make that argument, no response to Lewis's straw man was required.

Moreover, as Lewis seems to recognize, the question of whether Lewis can claim qualified immunity hinges not her status as a private/public actor but rather on whether Plaintiff had a "clearly established" constitutional right at the time Lewis and co-Defendants subjected her to a false and bad-faith license referral. In other words, it hinges on whether Plaintiff had exercised her clearly established First Amendment right to free speech—an issue Plaintiff has responded to fully, as reiterated above. Indeed, as Justice Ginsberg noted in her concurrence, the Court in *Filarsky* did not address whether the dispute at issue included violation of a "clearly established" right. 566 U.S. at 396-97("...but the Circuit's law will remain muddled

---

[1] Although omitted from her Brief in Support of her Motion for Sanctions (ECF 53), Lewis presented this argument in Oct. 30, 2023 Reply Brief in support of her pending Motion for Summary Judgement. Because it overlaps with arguments related to the sanctions motions, Plaintiff briefly addresses it here.

absent the Court of Appeals' focused attention to the question whether Filarsky's conduct violated 'clearly established' law.")

## C. Plaintiff's Equal Protection Class-of-One Claim Against Lewis is Legally Cognizable

Here, Defendant Lewis contends that *Geinosky v. City of Chicago*'s bar on class-of-one claims by public employees challenging a termination bars Plaintiff's claims. ECF 53 at 11-12; 675 F.3d 743, 747 (7th Cir. 2012) (citing *Engquist v. Ore. Dep't of Agric.* 553 U.S. 591, 607 (2008)). But as made clear in her opposition to summary judgment, ECF 58, Plaintiff's class-of-one claim does not include a wrongful termination claim nor other "personnel action." Rather, her class-of-one claim arises out Defendants' post-employment referral to the state licensing board ("DPI") that Johnson "resigned in the face of an immoral conduct charge", which occurred when Plaintiff was not even employed by Defendant KUSD, and Lewis contends KUSD filed the charge because of fear of criminal prosecution. Plaintiff's claim further alleges that the DPI referral as filed maliciously and in bad faith. Among the facts supporting this claim is the fact that Defendants' DPI referral was false, insofar as it omitted critically material facts and circumstances, such as the fact that the KUSD School Board found the charges to be unsubstantiated. (PPFOF. 58. (Dkt. 4-19 p, 74.)

Whether *Geinosky* and *Enguist's* bar applies to post-employment retaliation is far from settled law. In fact, the question of whether the DPI referral at issue falls within the "public employment context" addressed in *Engquist* is nearly an

issue of first impression, with only a pair of district court decisions addressing the question. The facts and reasoning of those decisions are distinguishable and debatable. Perhaps recognizing that this dearth of case law fatally undermines her sanctions argument on this point, Defendant Lewis mischaracterizes and downplays what it calls Plaintiff's "exploration" of the purportedly controlling case. For example, in her recently filed Reply brief in support of summary judgement, Defendant Lewis oddly accuses Plaintiff of calling to **"overturn"** one of these cases, *Clark v. Milwaukee Cty,* ignoring the basic principle that, as a district court decision, *Clark ,* is not conclusive, binding precedent. (ECF 62 at 9) (emphasis added). (citing 2018 U.S. Dist. LEXIS 208585 (E.D. Wis. Dec. 11, 2018)).

In short, describing Plaintiff's argument as an effort to "disturb precedent" (ECF 62 at 10) is farfetched, unlike Plaintiff's argument that *Engquist* applies only to quotidian personnel actions distinguishable from the conduct at issue in this case, a bad-faith and materially misleading DPI referral made against a former employee. (ECF 58 pp. 16-18, 25-28; ECF 59-PPFOF 16-18, 26-29, 33-41, 46-47, 57-70, 73-74) re facts supporting falsity and bad faith referral). At best, Defendant Lewis describes a contested question of law, which is nowhere near sanctionable.

**D. Plaintiff's Allegations Regarding Defendant Lewis Are and Have Always Been Based on Facts and Evidence, Including but not Limited to Duncan's Email, the Veracity of Which Plaintiff has Never had Reason to Doubt.**

This component of Defendant's argument is essentially a miniature version of a Rule 56 "proposed findings of fact," but with less citations and far more

editorialization. First, Lewis seizes on a disconnected smattering of allegations from the Complaint and asserts, in conclusory fashion, that they each "lack evidentiary support." While it is difficult to ascertain precisely how or why Defendant feels each of the cited complaint allegations are baseless, the reality is that each of the cited allegations have clear factual support. Indeed, several allegations—e.g.,

- Compl. ¶¶ 56 "Superintendent Savaglio-Jarvis and attorney Lewis animated by Wehr and Principal Schroeder refused to allow Johnson to resign and demanded her termination." After Wehr complained Savaglio Jarvis directed O'Connor not to accept Johnson's offer to resign. (LPFOF # 12, 24; 25; DPFOF # 141.)  Savaglio Jarvis said of Johnson: "this woman needs to be fired" prior to the investigation. (PPFOF # 8 and Lewis' response "No dispute that this was O'Connor's testimony. There is no similar testimony from Savaglio-Jarvis."  (ECF 64 p. 4);

- Compl. ¶¶ 61 "Superintendent Savaglio-Jarvis prosecuted Johnson with legal counsel from Attorney Shana Lewis."  There is no dispute (LPFOF # 32);

- Compl. ¶¶ 66 "Attorney Shana Lewis coached [Human Resources Coordinator Maxceen Augustus] and directed the HRC on what testimony to provide to the board."   (LPFOF # 41, 42,44, 73; PPFOF # 62);

- Compl. ¶¶ 68 "Attorney Shana Lewis coached [Human Resources Coordinator Maxceen Augustus] and directed the HRC on what testimony to provide to the board."  See LPFOF # 42 "Duncan further testified that it was his "understanding," from Augustus, that Augustus was "coached." See also Id. # 41, 73; PPFOF # 62,63);

- Compl. ¶¶ 74 "The CHRO resigned soon afterward because of the false license referral and other problems with Savaglio-Jarvis and Lewis." Lewis does not dispute that O'Connor resigned because of Savaglio-Jarvis but denies Lewis had anything to do with O'Connor's resignation.  (ECF 64 p. 9) O'Connor further testified:

Q Okay. And just going back to your resignation letter for a minute, is one of the reasons that you resigned the Sherry Johnson hearing?

THE WITNESS: Yeah, it's all wrapped into why I left.  (ECF 41-4 117:7-13.)  See also PPFOF # 28-30.

- Compl. ¶¶ 78 "Lewis answered on behalf of the District that the District was required to send the referral because of Wis. Stat. Sec. 115.31."  Lewis does not dispute the allegation: (LPFOF # 68; DPFOF, 164); ECF 41-9 p. 77-85);

- Compl. ¶¶ 87 "On April 23, 2021, the Board responded [implicitly to Johnson's husband's overtures to the school board] by terminating Strang, Patteson, Lewis & Lacy, Attorney Lewis' law firm. Lewis does not dispute this: "In one of Duncan's final acts on the school board, he

made the motion to remove Lewis' law firm from the list of approved

providers. (LPFOF # 59) see also Id. # 60; DPFOF, 212, 213)

—have been proven nearly beyond dispute, and certainly without

countervailing facts.

The remaining allegations are supported by corroborating testimony and

documentary evidence.

Compl. ¶¶ 65 "Superintendent Savaglio-Jarvis and Attorney Shana Lewis

were more concerned about retaliating against Johnson than confidentiality, good

management, and decency." This statement of the Plaintiff's theory of the case is

demonstrated in Johnson's Brief in Opposition to Summary Judgment (ECF 58-0;

see also PPFOF # 11-31, 60-71);

Compl. ¶¶ 72 "On March 6, 2020, three days after the District acquitted

Johnson at hearing, Savaglio-Jarvis and Lewis approached the [Chief Human

Resources Officer Lindsey O'Connor] and demanded that the CHRO sign a license

referral (complaint) against Johnson alleging that Johnson resigned "in the face of

an immoral conduct charge". Ms. O'Connor testified to these facts under oath.

(PPFOF # 17, 22, 28-30, 70, 71);

Compl. ¶¶ 73 "The CHRO made it clear that she did not believe that the

referral was accurate and believed her job was threatened by Savaglio-Jarvis and

Lewis to sign."

> Q Okay. Did you believe that there would be a consequence to you in
> terms of -- and I want to get this word right -- positional authority if
> you didn't file the license referral with DPI?

A Yes.

(ECF 41-4 106:25-107:4; see also PPFOF # 22, 28- 30, 70, 71);

Compl. ¶¶ 79 "Savaglio-Jarvis and Lewis were motivated by personal malice." (PPFOF # 11, 15-18, 20, 22, 25, 27-31, 38-41, 47, 56-71, 73).

Likewise, while Plaintiff may not personally have investigated Duncan's assertions, her counsel did, by confirming the allegations in the Tom Duncan email prior to filing the Complaint by at least the following:

- Interviewed Duncan, albeit briefly.  (ECF 41-5 134:11-19, 135:3-15; (Hitchcock Cross Decl.  ¶ 2.)

- Interviewed O'Connor, O'Connor told the Plaintiff's attorney that Lewis and Savaglio-Jarvis forced her to sign the complaint and that Lewis and Savaglio-Jarvis coached Augustus and that O'Connor resigned in part because of the Johnson hearing and referral, which O'Connor repeated at her deposition.  (Hitchcock Cross Decl.  ¶.3.) O'Connor gave Johnson's counsel documents from O'Connor and Tom Duncan regarding O'Connor's resignation and communications to the Board about O'Connor's complaints against Lewis and Savaglio-Jarvis for forcing her to file the DPI referral against Johnson.  (Hitchcock Cross Decl. ¶ 4.)

- Email from Board Vice President Mary Modder apologizing to Johnson for the DPI referral and stating that the consensus should be that [Johnson] was acquitted.  (ECF 57-1; (Hitchcock Cross Decl. ¶ 5.)  Lewis argues that the Modder email is hearsay (ECF 64 p. 10), but it is a

statement of a party-opponent namely the KUSD Vice President acting in her capacity as Board member. (Fed Rules Evid R 801.) The email is also admissible under Fed Rules Evid 803 because it preserves the Vice President's state of mind upon learning that Lewis and Savaglio-Jarvis filed the DPI referral against Johnson.

- KUSD produced some Public Records to Plaintiff's Counsel including the Augustus separation agreement prior this litigation. However, KUSD also withheld documents, not only from the Plaintiff but also from their own attorney. (Hitchcock Cross Decl. ¶6; Exh. B.) Both O'Connor and Board Secretary Busby testified that Lewis and Savaglio-Jarvis altered and concealed public records. (ECF 41-4 "O'Connor" 7:7-14; 17:2-20; 18:9; 124:13-21; ECF "Busby" 56-4 at 63:1-64:14.)

Lewis continues to deny that she had anything to do with the altering of public records. O'Connor testified that Lewis and Savaglio Jarvis pressured her to discipline a black female to defeat an existing discrimination complaint. (ECF 41-4 O'Connor 75:6-16.)

Also, Plaintiff obtained a copy of a letter sent by Augustus to KUSD regarding her legal claims. (Hitchcock Cross Decl. ¶ 7 .) The letter contained several bullet points including the following:

At the urging of KUSD's outside counsel, Attorney Shana Lewis, **Ms. Augustus felt forced, over her expressed misgivings**, to give emotional testimony about her own special-needs child in another

employee's disciplinary hearing. Attorney Lewis advised that doing so would more strongly convey Ms. Augustus's and KUSD's passion for advocating on behalf of disabled students.

Attorney Lewis emailed Ms. Augustus multiple times, and offered not legal advice, but her own criticisms of Ms. Augustus's decision-making and job performance.

. . .As the information and documents Ms. Augustus provided to Board President Tom Duncan and Attorney Joseph Russell shows, Dr. Sue repeatedly instructed Ms. Augustus to "shred" drafts (including investigation reports and memos, . . . regarding employee decisions and the decision making process. **Dr. Sue also repeatedly instructed Ms. Augustus to convey to employees that HR made decisions that Dr. Sue herself made (overruling HR) and to deny Dr. Sue's involvement in employment decisions**. In other words, Dr. Sue repeatedly ordered Ms. Augustus to falsify KUSD records and to lie.

Dr. Sue's orders to destroy/alter records relating to employment decisions also violated the Open Records Law. **A clear-cut example is Attorney Lewis's advice on March 20, 2019 – with Dr. Sue's knowledge and consent – to direct Ms. Augustus to create a new document or withhold an existing document (because it would "highlight the conflict" between HR's recommendation and Dr. Sue's decision regarding Kurt Sinclair) in response to a Fox news Open Records request**. (Hitchcock Cross Decl. Exh. A (emphasis added).)

The Plaintiff's counsel also had evidence of Lewis' involvement in the hearing and in directing the CHRO to file the false and misleading DPI referral; (ECF 55-1; Hitchcock Cross Declaration (ECF 56) ¶¶A ) (ECF 35-23-"Tom Duncan letter"); (ECF 59 PPFOF 61, 63 -regarding factual support for allegations regarding HR Coordinator Maxine Augustus having her testimony "coached" by Defendant Lewis).

Next, Defendant Lewis takes issue with an email statement by a witness, former School Board President Tom Duncan. Citing vague deposition testimony which Lewis feels is inconsistent with the email statement, Defendant Lewis

concludes that the email's statement is false. While Defendant is free to attempt to impeach Mr. Duncan at trial, nothing in the record supports anything close to a conclusive finding that Mr. Duncan's statements regarding the Sherry Johnson due process/name clearing hearing are false.

Finally—and likely in recognition of the fact that mere existence of the basis to dispute a witnesses' credibility cannot, by itself, support a Rule 11 motion— Defendant Lewis goes the additional step of claiming **(1)** that Plaintiff and her counsel *should have known* that Mr. Duncan's email was a falsehood; and (2) that the letter was "the sole basis" for Plaintiff's "federal lawsuit." (ECF 53 at 8-9). Both facially hyperbolic contentions are unsupported. Indeed, Plaintiff simply never testified that the Duncan email was the "sole basis" for her lawsuit in the cited deposition testimony. Rather, she simply identified Duncan's email as the primary reason she decided to include Defendant Lewis in the suit. (See Plaintiff's denial and response to Lewis's PFOF 74.) At the time of filing, Plaintiff's counsel had no reason to doubt the veracity of Duncan's email, let alone recognize it as the sort of fabrication Defendant claims it is. (Hitchcock Cross Decl. ¶9.)

## IV. <u>CONCLUSION</u>

Defendant Lewis's Rule 11 Motion is supported by disputed facts and inaccurately characterizes the evidence. Accordingly, Lewis's motion, like her Motion for Summary Judgment, must be denied.

Dated this 6th Day of November, 2023

Respectfully Submitted,

**CROSS LAW FIRM, S.C.**
Attorneys for Plaintiff Sherry Johnson

/s/ Ben Hitchcock Cross
Ben Hitchcock Cross
Bar Number: 1066395
Mary C. Flanner 1013095
mflanner@crosslawfirm.com

Cross Law Firm, S.C.
845 N. 11th Street
Milwaukee, WI 53233
Phone: (414) 224-0000
Fax: (414) 273-7055